# 7455

S T A T E   O F   L O U I S I A N A

PARISH OF ORLEANS

----------------------------------------

| | | |
|---|---|---|
| WIDOW CHARLES PERRY, Appellee, | : | No. 6754 |
| versus | : | |
| JUNIUS HART PIANO HOUSE, LTD., Apellant. | : | COURT OF APPEAL. |

----------------------------------------

Max Dinkelspiel, Judge.

---------------------------------

In February 1909 plaintiff bought of the defendant a piano for the sum of $400.00, on the installment plan, at $8.00 a month, and the contract specified that should she fail to pay the price as it matured she would deliver the piano to defendant, and upon her failure so to do when requested, that defendant was authorized to take possession of the piano and sell the same to the best advantage within ninety days in satisfaction of the balance due.

The first few payments were made promptly, but thereafter the contract terms were not strictly complied with. Plaintiff, however, paid small amounts at indefinite intervals and gradually fell into arrears, so that by the end of May, 1910, she had paid a little in excess of one-half of the amount that had then matured under the contract. At that time there were deferred payments due the defendant, and plaintiff went to defendant's establishment and informed them that she intended temporarily leaving the city, but would return shortly to her home. There is nothing in the record to show that she asked for an extension of time for payments, and certainly, if this was not so, there was no extension offered or made. If there was, the record fails to show it.

Plaintiff at the time either kept a lodging or boarding house and had, according to the record, quite a number of people stopping with her. After she had left the city a day or two, the defendant sent to her home one of its collectors. This man called and asked for the whereabouts of the plaintiff and was informed by one of the boarders or lodgers that she had left the city and had notified defendant of that fact, and that she would shortly

return. He became insistent, seeming not to understand why or wherefore plaintiff had left, and the boarder, upon ascertaining the nature of the business, offered to pay, partially, the amount past due, as heretofore recited, to the collector. The latter remarked that he could not do that without seeing the defendant, his employer, and, with this statement, left the house. The next thing that developes is that men, sent by the defendant, came to plaintiff's house and forcibly took possession of the piano, against the protests of all the people in the place, without any warrant, much less the institution of any civil proceedings, and by force, notwithstanding the remonstrances of the people in the house, the piano was taken to the defendant's store.

Subsequently plaintiff was informed of the facts, and immediately returned to New Orleans and at once went to the defendant's place of business and there protested over and over again at what had been done, without cause, — ready and willing to pay the installments, but defendant's agents refused to accept, gave no explanation of any kind or character to plaintiff, and, after repeated demands to get her property or to have some satisfaction, in knowing where it was, she was finally told that the piano had been sold and was no longer in existence so far as she was concerned, without stating to whom it had been sold or anything else about it.

This was the beginning of the events subsequently to follow.

The record of the Civil District Court, No. 105,134, Division "B", shows that a petition was filed by the plaintiff on July 7, 1913, in which the allegations were substantially to the effect heretofore stated. In the 4th article, the allegations are: "That petitioner filed suit for the damages resulting from said tresspass and unlawful entry of her premises, and therein these defendants reconvened for the balance due them by petitioner on said piano." Alleging, further, "that said suit No. 94,369 of the docket of this court ended by judgment in favor of the de-

fendant."

From that judgment there was an appeal to this court, which
will be found in Court of Appeal Reports, Volume 1C, at pages
170 et seq. The organ of the court was the Honorable Emile.
Godchaux. At page 174, the court says:

> "Plaintiff does not sue for any pecuniary loss entailed
> by defendant's act, but confines her claims to damages for
> the humiliation suffered, etc., and to exemplary damages.
> There is no question that she was greatly shocked and hu-
> miliated by what occurred, several of her tenants left her
> on the plea that they feared that the balance of the furnish-
> ings of the house would be removed, and the fact that the
> piano was of comparatively small value and was removed with-
> out violence or injury, does not materially affect the ex-
> tent of defendant's liability."

They cite Thayer v. Littlejohn, 1 Robinson, 140; Van Wren v.
Flynn, 34 A., 1158; Boniel v. Block, 44 A., 514.

When the case again was tried in the lower court, after
hearing pleas, exceptions, answers, - all of which is evidenced
by the record and need not be quoted in this opinion - the court
rendered judgment in favor of the defendant.
Plaintiff then appealed to this court, and the judgment
was reversed. (See Court of Appeal Reports, Vol. 13, p. 416,
where again his Honor, Judge Godchaux, was the organ of the
Court).

After the case went back to Division "B" of the Civil
District Court defendant's attorney wrote to plaintiff's attorney
asking him to make up a statement of the judgments, in order to
have settlements, and the reply was accepting the check of the
Junius Hart Piano House Ltd., the defendant, for $20.00, and
both plaintiff and defendant marked the docket satisfied.

It is here urged in brief and argument by the defendant's
counsel that both judgments heretofore alluded to have been
extinguished and the docket satisfied, hence the matter is
res judicata, and that there was not even an application for
rehearing by Mrs. Perry, and therefore she was evidently satisfied

■

with what she got, and she was not entitled to the return of the piano; that she owed the Junous Hart Piano House $326.00 with interest, approximately altogether $400.00, that this was a final judgment and therefore must be so respected and regarded.

We do not agree with counsel's contentions. The suit for damages is one thing, the suit for the possession of the piano, and the judgment thereunder, is another; therefore there can be no res judicata, under the law. And the judgment rendered by this court in the last case, in our opinion controls, and it disposes of the question of res judicata clearly, in this way: "Certainly the judgment cannot be interpreted as awarding to defendants a permanent or indefeasible right of possession of the property, for that would be tantamount to a recognition of defendants' ownership of it; while the fact is that the question of title was never involved in that proceeding, but on the contrary, the judgment itself, in recognizing defendants' privilege as unpaid vendor and his right of retention, negatives his ownership and stamps the character of his possession as merely temporary or defeasible." Again: "In other words, since the first judgment recognized in defendant but a temporary right of possession, is no bar to the present action, which is based upon the contention that this right has since terminated."

Finally, in the able brief of counsel, in the alternative, — the plea of res judicata being overruled, as has been done, — it is contended that having purchased the piano in February 1909 for $400.00, payable in installments, the piano having been removed on the 14th of June 1910, and sold in June 1913, counsel asks "How much was the piano worth at that date?" He then quotes from the testimony of a Mr. Stocker, who, amongst other things, swears that he sold this piano on monthly installments of $6.00 for $275.00, that it cost defendant at least 25% to collect the installments, and therefore, under the circumstances, the net

241

amount would be $206.25, which counsel says is a good price for a second-hand piano bought in 1909 and standing idle until 1913.

This may be true: we have no method of ascertaining whether it be so or not. But, taking it for granted, it can have no possible application to the facts of this cause.

When plaintiff had in the meantime paid the entire amount due defendant and therefore was entitled to the article that she had bought, - the piano in question, - the least that defendant should have done, under the judgments rendered, was to have repaid her the $400.00 which the judgment of the lower court allowed; and whether defendant sold it at one price or another, and whether it cost 25% more or less in order to effect sales, make collections, etc., is absolutely immaterial to the issues as presented in this cause.

The piano house, defendant, had refused to return the piano which it had previously unlawfully disposed of, and therefore wrongfully and by its fault put it beyond its power to return the piano to the possession of its owner. In acknowledgement of its wrongdoing, and to avoid reimbursing $400.00, interest and costs, that she had paid, defendant offered to give her another much inferior piano, which she of course refused. Hence this suit, wherein she has recovered the price she paid on the piano illegally taken from her.

With the authorities quoted in the opinion of this court heretofore rendered, and cited in this cause, there can be but one result, and that is that the judgment of the court a quo be and is hereby affirmed, with costs in both cases.